# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville November 15, 2011

## STATE OF TENNESSEE v. JACOB AARON FAULKNER

**Appeal from the Criminal Court for Sumner County**
**No. 336-2010    Dee David Gay, Judge**

**No. M2011-00801-CCA-R3-CD - Filed June 1, 2012**

The Defendant, Jacob Aaron Faulkner, pled guilty to driving under the influence (DUI), first offense. Under the terms of the agreement, he received a sentence of eleven months and twenty-nine days in the county jail, suspended to probation following the service of forty-eight hours. As part of the plea agreement, the Defendant reserved a certified question of law challenging the trial court's denial of his motion to suppress the evidence resulting from his traffic stop: whether the officer had reasonable suspicion to believe he violated the "move over law." After our review of the record, we dismiss the appeal because the Defendant failed to file a timely notice of appeal and there is no reason justifying waiver of the filing requirement.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

John Pellegrin, Gallatin, Tennessee, for the appellant, Jacob Aaron Faulkner.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Lawrence Ray Whitley, District Attorney General; William G. Lamberth, II, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On April 8, 2010, a Sumner County grand jury indicted the Defendant for DUI, DUI per se, and violating the "move over law." See Tenn. Code Ann. §§ 55-8-132(b), -10-401(a). The Defendant filed a motion to suppress all evidence obtained as a result of his traffic stop, arguing that the police officer who initiated the traffic stop did not have reasonable suspicion

to believe he committed a traffic offense, in this case, a violation of Tennessee Code Annotated section 55-8-132(b), commonly referred to as the "move over law."

During a hearing on the motion, Officer Jason Lance Tolbert, with the Portland Police Department, testified that around 1:00 a.m. on October 25, 2009, he initiated a traffic stop of a vehicle traveling east on Highway 52 for possible DUI. The highway had two lanes for westbound traffic and two lanes for eastbound traffic; the speed limit in the area was forty miles per hour. According to Officer Tolbert, the shoulder of the road was approximately three to four feet wide, and after that distance, there was a curb. The stopped vehicle, Officer Tolbert's patrol car, and the backup officer's patrol car were pulled onto the eastbound shoulder of the highway and were parked in the emergency lane "right next to the yellow line." The backup officer's car was parked behind Officer Tolbert's car, and Officer Tolbert's car was parked behind the stopped vehicle with the front tires of his car angled towards the road. Officer Tolbert's emergency lights were flashing.

Officer Tolbert said that he got out of his patrol car and attempted to approach the stopped vehicle, accompanied by the backup officer. He looked back at the other officer and saw a white Chevrolet truck extremely close to that officer's patrol car. He said to him, "[H]ey, man, look out, we're fixing to get run over." According to Officer Tolbert, the truck drove by in the lane immediately adjacent to the shoulder of the highway, never attempting to get over. He said that the truck almost hit him, coming only three to four feet away; he "could feel the wind off the vehicle."

Officer Tolbert radioed ahead to Portland Police Department Officer James Nicholas Hurt, who was traveling to the east nearby. He informed Officer Hurt of the situation and requested that he pursue and stop the truck. Officer Hurt did just that. After Officer Tolbert completed the stop he was on, he proceeded to Officer Hurt's location. He recognized the truck as the same vehicle that drove past him and encountered the Defendant as the driver.

On cross-examination, Officer Tolbert testified that he did not see another vehicle come by just before the Defendant's truck. On redirect, Officer Tolbert confirmed that there were other lanes the Defendant could have moved over into. Upon questioning by the trial judge, Officer Tolbert stated that his visibility for oncoming traffic was approximately a quarter to a half of a mile and that there were no obstructions to impede his view. Officer Tolbert stated that he had been with the Portland Police Department for five years.

Officer Hurt testified that he received Officer Tolbert's radio call that morning. Almost immediately after getting the call, he observed the described truck and initiated a traffic stop.

The Defendant testified that he was pulled over on October 25, 2009, between 1:00 and 1:30 a.m. after consuming several beers that evening. He stipulated that his blood alcohol content was later determined to be .15 percent following his arrest from this traffic stop.

The Defendant disagreed with Officer Tolbert's version of events. According to the Defendant, there was no shoulder or emergency lane, and the three vehicles were parked in the right-hand lane of the highway. He was following behind his wife. Upon seeing the cars parked in the roadway, he slowed to approximately fifteen to twenty miles per hour and moved over into the left-hand lane of travel. He testified that he "got as close to the double yellow lines as [he] could without crossing the double yellow lines."

On cross-examination, the Defendant stated that he first saw the cars after going over a "little crest." According to the Defendant, he was already in the left-hand lane at that time.

Upon questioning by the trial judge, the Defendant said that he and his wife were in two vehicles that evening because they had gotten into an argument. She had also been drinking, consuming about two beers. He had a "bad night," and they were going home from his cousin's house.

The Defendant's wife testified confirming certain details of the Defendant's version. She stated that the Defendant was directly behind her when they passed the vehicles stopped in the right-hand lane of travel. She explained that "there was not enough of a shoulder for them to really pull off of the road right there."

At the conclusion of the hearing, the State argued that Officer Tolbert properly stopped the Defendant because he came very close to the officers and did not pass safely. The defense argued that no traffic violation occurred because the evidence showed the Defendant slowed down and maintained his travel in the left-hand lane. The trial court ruled that the stop was proper, reasoning as follows:

> This is a factual basis and just factual determination here on what the facts are.
> . . .
>
> . . . .
>
> So I think the testimony is clear here under the highway that we've got, it's four lanes. If we've got a vehicle over in the right hand lane that has been stopped, and we have emergency lights on without any impending traffic, the

driver approaching this particular situation should be free to move over into the next lane.

Now, [the Defendant] testified and one thing that I consider is the fact that he said he had eight or nine beers. He said he's had a bad night and I consider that when he testified. It's interesting that the officer never saw the wife drive by and I don't understand that particular situation.

However, Officer Tolbert who's got five years of experience, was particularly credible and I give credit to his testimony. Five years serving on the Portland Police Department at 1:30 in the morning he's got this vehicle stopped on the side of the road. And he was very specific . . . as to where the vehicle was located, where his vehicle was located, the turn of the front of the vehicles, the terrain in the area, and so forth.

And he said this vehicle was stopped and he saw the [D]efendant's vehicle coming and it came very close. Particularly important I think is the fact that this was so close, more so than others that he let slide by. He said that he could feel the air from the vehicle and that is just too close under these circumstances.

By the grace of God this officer was not hurt and the [D]efendant was not hurt. I give much credibility to Officer Tolbert. I do not give credibility to the [D]efendant or the [D]efendant's wife under those circumstances.

The Defendant filed a motion to amend the record and for a rehearing. The Defendant first noted that the officers testified that "there was ample room, over three feet," on the shoulder of the highway, allowing them to "be entirely out of the right-hand lane of traffic." The Defendant then alleged that he had obtained "additional evidence and measurements concerning the roadway and the shoulder . . . essential to understanding the facts behind the traffic stop in question" and which disputed the officers' testimony. The trial court denied the motion but permitted the Defendant to make an offer of proof. Those collective photographs are a part of the record on appeal.

Thereafter, the Defendant pled guilty to DUI, and the "move over law" charge was dismissed.[1] Under the terms of the agreement, he received a sentence of eleven months,

---

[1] Neither a transcript of the plea hearing nor a copy of the plea agreement are included in the record on appeal.

twenty-nine days, to be served as forty-eight hours in jail and the remainder on probation. The judgment was filed on February 14, 2011.

As part of his plea, the Defendant, pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure, attempted to reserve the right to appeal a certified question of law dispositive of the case. The judgment of conviction form contained the following notation within the special conditions section: "Defendant plead guilty pursuant to appeal." An agreed order was filed on March 7, 2011. In the order, which is signed by both parties and the trial judge, the Defendant first recounted the procedural history of the case and then reserved the following question: "whether or not, under the facts in this case, the Defendant could have violated T.C.A. 55-8-132, commonly referred to as Tennessee's 'move-over law', thus giving the police sufficient reason to make a traffic stop on the Defendant." The Defendant filed his notice of appeal document on April 6, 2011.

## ANALYSIS

The Defendant contends that the trial court erred by denying his motion to suppress because Officer Tolbert had no reasonable suspicion to stop him since he was in the left-hand lane of travel, slowed down, and "eased his vehicle over within his lane of travel." Relying on the collective photographs he submitted as an offer proof, he "implore[s]" this court to conclude that Officer Tolbert's version "is a physical impossibility and . . . should not be given credence." Initially, the State responds that the Defendant's case should be dismissed because he failed to file a timely notice of appeal. The State further responds that the trial court properly denied the Defendant's motion to suppress because Officer Tolbert had reasonable suspicion that the Defendant violated the move over law. Additionally, the State contends that the photographs are not properly before this court for our review, noting that the Defendant has not challenged the trial court's refusal to accept said photographs.

First, we agree with the State that the notice of appeal document was untimely. Pursuant to Tennessee Rule of Appellate Procedure 4(a), a notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). The judgment in this case was filed on February 14, 2011; however, the notice of appeal was not filed until April 6, 2011, more than thirty days after the judgment was filed.

We acknowledge that the untimely filing of a notice of appeal is not always fatal to an appeal. State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). Rule 4(a) states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "'In determining whether waiver is appropriate, this court will consider the nature of the

issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" Rockwell, 280 S.W.3d at 214 (quoting State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). Waiver is not automatic and should only occur when "the interest of justice" mandates waiver. Id. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction. Id. (citing Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996)).

The Defendant has not provided this court with any explanation or discussion regarding the untimely filing of the notice of appeal. See Rockwell, 280 S.W.3d at 214. In his notice of appeal, the Defendant asserts that he is appealing from the agreed order filed on March 7, 2011. However, although the trial court had jurisdiction to enter the agreed order prior to the filing of the notice of appeal document, the filing of that order did not toll the thirty-day requirement for filing the notice of appeal. See Tenn. R. App. P. 4(c) (listing the motions or petitions that toll the time for filing a notice of appeal); Tenn. R. Crim. P. 37(b)(2)(A)(i) (noting that the judgment or order reserving the question is "filed before the notice of appeal").

Moreover, waiver is not mandated because the Defendant has failed to comply with the procedural requirements for reserving a certified question. Tennessee Rules of Criminal Procedure 37(b)(2)(A) provides that a defendant may appeal from any judgment of conviction on a plea of guilty or nolo contendere, if:

> (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved—with the consent of the state and of the court—the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (i) the judgment of conviction <u>or other document to which such judgment refers</u>[2] that is filed before the notice of appeal, contains a statement of the

---

[2] Effective July 1, 2011, this portion of the rule was amended and now provides, "the judgment of conviction or order reserving the certified question[.]" See Tenn. R. Crim. P. 37, Compiler's Notes. The Advisory Commission Comment to the amendment provides as follows:

> The amendment to Rule 37(b)(2)(A) addresses those cases where the certified question of law is not stated in the judgment. In such cases, the amendment removes the requirement that a separate document setting forth the certified question of law be incorporated by

(continued...)

certified question of law that the defendant reserved for appellate review;

(ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv) (2010) (emphasis added); see also State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003); State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). The burden is on the defendant to see that these prerequisites are in the final order and that the record brought to the appellate court contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. Pendergrass, 937 S.W.2d at 837. Because of the dispensatory nature of a certified question appeal, our supreme court firmly rejected a rule of substantial compliance, see Armstrong, 126 S.W.3d at 912, and instead demanded strict adherence to Rule 37(b), as that rule has been amplified by the court itself.

Rule 37, as is applicable to this case, permits the review of a certified question of law in instances where the "other document to which [a] judgment refers that is filed before the notice of appeal" otherwise satisfies the requirements of the rule. See also State v. Irwin, 962 S.W.2d 477, 479 (Tenn. 1998) (acknowledging that a separate document that comports with Rule 37 requirements will afford this court jurisdiction so long as the document is incorporated into the judgment). However, the February 14, 2011 judgment of conviction in this case contained only the following notation within the special conditions section: "Defendant plead guilty pursuant to appeal." The agreed order specifying the certified question was not filed until March 7, 2011. The judgment failed to incorporate by reference the separate order filed three weeks later, which failure renders this court without jurisdiction

---

[2](...continued)
 reference in the judgment, and it allows the requirements of the Rule to be met by an order entered by the trial court certifying the question.

Tenn. R. Crim. P., Advisory Comm'n Cmts. 2011. However, this appeal is governed by the rule in effect at the time the question was certified. See State v. Deangelo M. Radley, No. M2011-00165-CCA-R3-CD, 2011 WL 4695652, at *3 (Tenn. Crim. App. Oct. 7, 2011), perm. app. filed, (Tenn. Dec. 6, 2011).

to review this appeal. <u>See</u> <u>State v. Deangelo M. Radley</u>, No. M2011-00165-CCA-R3-CD, 2011 WL 4695652, at *3 (Tenn. Crim. App. Oct. 7, 2011) (citing <u>State v. Rickey Clayton Rogers</u>, M2009-02377-CCA-R3-CD, 2011 WL 795753, at *1 (Tenn. Crim. App. Mar. 8, 2011) (holding that "it is not sufficient that the 'other document' contains all the required information[;] . . . the judgment must refer to the 'other document' which contains the necessary information"); <u>State v. Curtis Emmanuel Lane</u>, E2004-02340-CCA-R3-CD, 2005 WL 2862972, at *3-4 (Tenn. Crim. App. Nov. 11, 2005) (holding that addendum sufficiently setting forth Rule 37 requirements filed on the same date as judgment did not afford this court jurisdiction when judgment did not incorporate by reference the addendum), <u>perm. app. denied</u>, (Tenn. Mar. 2, 2006)), <u>perm. app. filed</u>, (Tenn. Dec. 6, 2011).

CONCLUSION

Having concluded that the interest of justice does not require a waiver of the timely filing of the notice of appeal, the appeal is dismissed.

_____
D. KELLY THOMAS, JR., JUDGE